UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY RICHARD ROUSH, JR., | |
| Plaintiff, | CIVIL ACTION NO. 3:20-CV-01946 |
| v. | (MEHALCHICK, M.J.) |
| KILOLO KIJAKAZI, Commissioner of Social Security,[1] | |
| Defendant. | |

# MEMORANDUM

Plaintiff Larry Richard Roush, Jr. ("Roush"), brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 6). For the following reasons, the undersigned shall order that the Commissioner's decision be **AFFIRMED.**

I. BACKGROUND AND PROCEDURAL HISTORY

On March 14, 2018, Roush protectively filed an application under Title II for disability insurance benefits, claiming disability beginning May 30, 2017. (Doc. 12-2, at 17). The Social

---

[1] The Court has amended the caption to replace, as the named defendant, Acting Social Security Commissioner Andrew Saul with his successor, Social Security Commissioner Kilolo Kijakazi. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

Security Administration initially denied the application on June 26, 2018, prompting Roush's request for a hearing, which Administrative Law Judge (ALJ) Gwendolyn M. Hoover held on June 28, 2019. (Doc. 12-2, at 17). In a written decision dated August 20, 2019, the ALJ determined that Roush is not disabled and therefore not entitled to benefits under Title II. (Doc. 12-2, at 29). The Appeals Council subsequently denied Roush's request for review. (Doc. 12-2, at 2).

On October 21, 2020, Roush commenced the instant action. (Doc. 1). The Commissioner responded May 10, 2021, providing the requisite transcripts from Roush's disability proceedings. (Doc. 11; Doc. 12). The parties then filed their respective briefs, with Roush raising two bases for reversal or remand. (Doc. 14; Doc. 16).

## II.   STANDARDS OF REVIEW

To receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[2] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131. To establish an entitlement to disability insurance benefits under Title II, the claimant must establish that he or she suffered from a disability on or before the date on which they are last insured.

### A. ADMINISTRATIVE REVIEW

The "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

### B. JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by

such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Roush is disabled, but whether the Commissioner's determination that Roush is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III.  THE ALJ'S DECISION

In her written decision, the ALJ determined that Roush "has not been under a disability, as defined in the Social Security Act, from May 30, 2017, through the date of this decision." (Doc. 12-2, at 29). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 404.1520(a)(4).

### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574(a)(2). Here, the ALJ determined that Roush "has not engaged in substantial gainful activity since May 30, 2017, the alleged onset date," and therefore proceeded to step two of the analysis. (Doc. 12-2, at 19).

### B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Roush had nine severe medically determinable impairments—major depressive disorder, single, moderate with anxiety distress, morbid obesity, bilateral arthritis in the knees, right knee torn meniscus, degenerative disc disease of the lumbar spine, nonischemic cardiomyopathy, and congestive heart failure. (Doc. 12-2, at 20).

### C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 404.1520(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that none of Roush's impairments, considered individually or in combination, meet or equal the severity of a listed impairment. (Doc. 12-2, at 21). He ALJ considered the following listings: 1.02 – major dysfunction of a join; 1.04 – disorders of the spine; 4.02 – chronic heart failure; 4.04 - ischemic heart disease; 12.04 – depressive, bipolar and related disorders, and 12.06 – anxiety and obsessive-compulsive disorders. (Doc. 12-2, at 21).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R.

§ 404.1529(b)–(c).

Here, Roush alleged that his medical impairments caused difficulties lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, remembering, completing tasks, concentrating, and understanding and following instructions. (Doc. 12-2, at 23). The ALJ found that while Roush's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Roush's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 12-2, at 24). The ALJ went on to detail Roush's medical records and treatment history. (Doc. 12-2, at 24-27). After weighing and considering the evidence, the ALJ determined that Roush had the, "[RFC] to perform sedentary work as defined in 20 C.F.R. 404.1567(a)," with additional limitations:

> [Roush] can never crawl or climb ladders, ropes, or scaffolds and can occasionally climb ramps/stairs, balance, stoop, kneel and crouch. [Roush] requires an assistive device at all times while standing and ambulating, and he is able to carry small items with the dominant left hand. [Roush] cannot tolerate concentrated exposure to humidity, cold, or heat and cannot tolerate exposure to workplace hazards, such as moving mechanical parts and high exposed places. Further, [Roush] would be limited to simple and routine tasks and can tolerate occasional changes in the work setting.

(Doc. 12-2, at 23).

E. STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §

404.1560(b). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his [or her] past relevant work despite his limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, based on testimony adduced from a vocational expert at Roush's administrative hearing, the ALJ determined that Roush was unable to perform his past relevant work and thus, proceeded to step five of the sequential analysis. (Doc. 12-2, at 27).

    F.    STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, considering Roush's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Roush can perform. (Doc. 12-2, at 28). In making that determination, the ALJ relied on the vocational expert's testimony that Roush is able to perform the requirements of occupations such as a final assembler of optical goods, carding machine operator, and order clerk for food and beverage with open positions ranging from 20,000 to 83,000 nationally. (Doc. 12-2, at 28-29). Accordingly, the ALJ determined that Roush is not disabled and denied his application for benefits. (Doc. 12-2, at 29).

## IV. DISCUSSION

### A. THE ALJ DID NOT ERR IN HER RFC DETERMINATION REGARDING ROUSH'S IMPAIRMENTS.

Roush contends that the ALJ failed to adequately consider his limitations regarding his severe impairments including his major depressive disorder, single moderate with anxiety distress, morbid obesity, bilateral arthritis in the knees, right knee torn meniscus, degenerative disc disease of the lumbar spine, nonischemic cardiomyopathy, and congestive heart failure. (Doc. 14, at 12). Specifically, Roush proffers that these impairments warrant "more significant limitations . . . including a sit/stand option." (Doc. 14, at 14). Roush also argues that the ALJ failed to account for his "limitations from those conditions that the ALJ did not consider to be severe, or barely mentioned in her decision . . . including diabetes, asthma, prostatic hyperplasia, myopia, learning disorder, fibromyalgia, bilateral neuropathy of the feet, and diffuse and sever hepatic steatosis." (Doc. 14, at 20). The Commissioner argues that the ALJ adequately accounted for Roush's "pain, fatigue, . . . decreased mobility associated with morbid obesity, and . . . use of a cane" along with his "history of depression and associated symptoms" (Doc. 16, at 16-17, 19). Additionally, the Commissioner argues that the ALJ found at least one severe impairment in step two of her analysis, rendering any failure to consider certain limitations non-severe harmless, as it did not affect the ALJ's "sequential evaluation process." (Doc. 16, at 19-21).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 121 (3d Cir. 2000) (quoting

*Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence to support the ALJ's RFC determination.

In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

At Step 5 of his determination, the ALJ found that

> [Roush] has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except can never crawl or climb ladders, ropes, or scaffolds and can occasionally climb ramps/stairs, balance, stoop, kneel and crouch. [Roush] requires an assistive device at all times while standing and ambulating, and he is able to carry small items with the dominant left hand. [Roush] cannot tolerate concentrated exposure to humidity, cold, or heat and cannot tolerate exposure to workplace hazards, such as moving mechanical parts and high exposed places. Further, [Roush] would be limited to simple and routine tasks and can tolerate occasional changes in the work setting.

(Doc. 12-2, at 23).

Roush argues that the ALJ did not account for his physical and mental limitations in constructing his RFC. (Doc. 14, at 14-18). Specifically, Roush contends that the ALJ should have included a sit/stand option "in light of the record in this matter" and that the ALJ erred in her RFC determination when she failed to account for Roush's "non-exertional limitations from his mental health." (Doc. 14, at 14-19). In determining Roush's RFC, the ALJ brought attention to Roush's alleged "disability due to a right knee torn meniscus, left knee pain, depression, congestive heart failure, diabetes, pain in the hips and lower back, neck and shoulder pain, and hypertension" and his symptoms of "knee pain, back pain, tingling of the feet and legs, tiredness, locking of the right knee, and hip pain." (Doc. 12-2, at 23). Additionally, the ALJ noted that Roush "uses a cane for ambulation and wears a knee brace." (Doc. 12-2, at 24).

The ALJ concluded that "the longitudinal evidence suggests that [Roush] can perform sedentary work." (Doc. 12-2, at 24; Doc. 12-10, at 107; Doc. 12-13, at 14). Specifically, the ALJ cited to evidence regarding support for her determination considering Roush's physical symptoms. (Doc. 12-2, at 24-25). The ALJ noted that Roush's symptoms of chest pain have improved with medication, his cardiomyopathy is "mild in nature and is managed with medication and routine medical visits," x-rays demonstrated no acute cardiopulmonary

abnormality, and Roush had "minimally depressed LV, good blood pressure and denial of lightheadedness with medication." (Doc. 12-2, at 24; Doc. 12-12, at 15, 18, 34; Doc. 12-18, at 2). Additionally, the ALJ considered Roush's orthopedic impairments "mild to moderate in nature," demonstrated by Roush's x-ray of the lumbar spine showing moderate degenerative changes, an MRI of Roush's right lower extremity demonstrating a moderate diagnosis, and a bone scan presenting "moderate degenerative arthritis and no active disease in the lumbosacral spine or SI joints with stable degenerative changes." (Doc. 12-2, at 24; Doc. 12-17, at 6).  The ALJ also noted that Roush did not present significant arthritis in his hips or evidence of nerve root compression, bladder or bowel involvement, or intractable pain. (Doc. 12-2, at 24-25; Doc. 12-17, at 7, 92). Additionally, the ALJ considered Roush's use of a cane stating that evidence corroborates his use, and that Roush manages his physical pain with "medications, a TENS unit, injections, physical therapy, anti-inflammatories, chiropractic care[,] and knee brace." (Doc. 12-2, at 25; Doc. 12-17, at 6). Thus, the ALJ sufficiently addressed Roush's use physical impairments when determining his RFC. (Doc. 12-2, at 24-25).

As for Roush's mental impairments, the ALJ determined that Roush "is capable of simple work activity . . . limited to occasional changes in the work setting to avoid exacerbation of his mental symptomology and to account for his history of cardiac symptomology that is aggravated by stress." (Doc. 12-2, at 25). The ALJ considered evidence that Roush's mental symptoms improved with medication, that Roush "does not require formal mental health treatment, inpatient psychiatric hospitalization, a highly supportive living arrangement, intensive medical care, visits to the ER or other significant treatment." (Doc. 12-2, at 25). The ALJ also noted that Roush demonstrates impairments in

attention/concentration and abnormality in mood and affect, but his treatment records demonstrate otherwise. (Doc. 12-2, at 25; Doc. 12-13, at 79-80). The ALJ also considered Roush's ability to perform a variety of daily living activities. (Doc. 12-2, at 25; Doc. 12-13, at 80). Thus, the ALJ sufficiently addressed Roush's mental impairments in her RFC determination. (Doc. 12-2, at 25).

As the ALJ considered and explained her reasoning with regard to the severity of Roush's physical and mental impairments and how they affect his RFC function, substantial evidence supports her RFC finding in this regard. (Doc. 12-2, at 24-25).

Roush also contends that the ALJ "erred and abused [her] discretion in failing to consider the effect of [Roush's] diabetes, fibromyalgia, neuropathy[,] and hepatic steatosis." (Doc. 14, at 21). Roush contends that such impairments should have been considered severe or considered in the ALJ's RFC determination pertaining to Roush's limitations. (Doc. 14, at 22-23). The Commissioner argues that the ALJ found at least one severe impairment in step two of her analysis, rendering any failure to consider certain limitations non-severe harmless, as it did not affect the ALJ's "sequential evaluation process." (Doc. 16, at 19-21). An impairment is deemed severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If a claimant fails to demonstrate a severe impairment, the ALJ will deem the claimant "not disabled." 20 C.F.R. § 404.1520(c).

The ALJ adequately considered Roush's non-severe impairments. (Do. 12-2, at 20-25). The ALJ determined that Roush's diabetes, fibromyalgia, neuropathy, and hepatic steatosis were non-sever as "there is no evidence that [Roush] had severe symptoms related to these conditions that persisted for twelve months or that would affect [Roush's] ability to perform basic work activities." (Doc. 12-2, at 20). The ALJ discussed Roush's diabetes stating

that it "is able to be managed with treatment compliance . . . as evidenced by the improvement in his A1c levels and reports of no complaints with treatment compliance" and that Roush's diabetes "is not associated with end organ damage or serious medical complications." (Doc. 12-2, at 20; Doc. 12-18, at 15). The ALJ discussed Roush's fibromyalgia and concluded that it was not a severe medically determinable impairment because the record revealed that "there was no evidence of a rheumatological etiology for [Roush's] musculoskeletal pain symptoms." (Doc. 12-2, at 21; Doc. 12-18, at 2). The ALJ also noted Roush's symptom of "tingling of the feet and legs" along with his elevated liver enzymes and concluded that the symptoms "appear to be well managed with conservative treatment or they only cause minimal functional limitations." (Doc. 12-2, at 20; Doc. 12-17, at 29). Thus, the ALJ demonstrated substantial evidence in her discussion of finding no more than mild limitations in any functional area and that Roush's diabetes, fibromyalgia, neuropathy, and hepatic steatosis were non-severe. (Doc. 12-2, at 20).

The ALJ supported her decisions regarding the severity of Roush's impairments with substantial evidence and appropriately reflected that severity in her RFC determination. (Doc. 12-2, at 20-25).

  B. THE ALJ'S TREATMENT OF DR. HENNING'S OPINION WAS JUSTIFIED

Roush argues that the ALJ failed to adequately articulate her reasoning for finding the opinion of Roush's treating physician Dr. Henning somewhat persuasive. (Doc. 14, at 26-27). Roush contends that as his treating physician and the only physician who actually examined him, Dr. Henning should have been afforded greater weight than other medical opinions. (Doc. 14, at 26-27). Roush also states that the ALJ improperly afforded persuasive weight to the state agency consultant Dr. Arnold. (Doc. 14, at 28). The Commissioner responds that

the ALJ's evaluation of Dr. Henning's opinion is sufficient under the new regulations as it explains the supportability and consistency of his medical opinion. (Doc. 16, at 23-24). Additionally, the Commissioner contends that the ALJ found Dr. Arnold's opinion "partially persuasive" and "articulated her analysis of this opinion." (Doc. 16, at 25).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion, which are the same factors that formed the foundation of the rule which prioritized the opinion of a treating

source. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *8 (M.D. Pa. Mar. 29, 2021) (citing *Andrew G. v. Comm'r of Soc. Sec.,* No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.NY. Oct.1, 2020)); 20 C.F.R. § 404.1520c(b)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 404.1520c(b)(3). "[W]hen the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8. To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d 700, at 706-707.

The opinion of Dr. Henning is an acceptable medical source as he is a licensed physician. 20 C.F.R. § 404.1502(a)(1); (Doc. 12-8, at 70). Under the new regulations, Dr. Henning "[is] not entitled to any deference given [his] status as [a] 'treating physicia[n].'" See *Duhl v. Kijakazi,* No. 20-1123, 2021 WL 5909819, at *3 (W.D. Pa. Dec. 14, 2021); (Doc. 12-8, at 70). The ALJ is only required to consider the supportability and consistency of the opinion of Dr. Henning, which she adequately explained in her opinion. (Doc. 12-2, at 26).

Here, the ALJ found that the opinion of Dr. Henning was not persuasive. (Doc. 12-2, at 26). The ALJ noted that Dr. Henning,

a treating medical provider, opined that the claimant can only lift and carry less than 10 pounds occasionally, sit and stand/walk for less than 2 hours total in an 8-hour day with the ability to shift positions at will, elevate his legs during the day, and take unscheduled breaks. Dr. Henning also opined that the claimant would be absent from work more than 4 days per month due to impairment or treatment and off task more than 15% of the workday (Exhibit 3F).

(Doc. 12-2, at 26).

The ALJ considered Dr. Henning's opinion unsupported "by the mild to moderate cardiac and musculoskeletal pathology via diagnostic studies and improvement in [Roush's] symptoms with use of a brace and medication in suggesting that the claimant can only sit for 2 hours total in an 8-hour day" and that "the opinion that [Roush] would need to elevate his legs during the day is not supported by the longitudinal treatment records that do not document recommendations to do the same." (Doc. 12-2, at 26; Doc. 12-9, at 88-93). Additionally, the ALJ found Dr. Henning's opinion inconsistent "with the mental status examination findings in the treatment records that show normal attention/concentration and cognition and improvement in the claimant's pain with medication and use of a knee brace in suggesting that the claimant would be off task 15% due to impairment." (Doc. 12-2, at 26). The ALJ further expressed that the evidence suggests that Roush's "symptoms would not prevent him from performing simple work activity from a mental standpoint." (Doc. 12-2, at 26). This conclusion by the ALJ is supported by the record and substantial evidence as the ALJ explained in detail her reasoning for finding Dr. Henning's opinion unsupported and inconsistent. (Doc. 12-2, at 26).

Roush also argues that the ALJ wrongly relied on the opinions of the state agency consultants and failed to support her determination with the record. (Doc. 14, at 28). The ALJ found the state agency medical consultant Dr. Arnold's opinion "partially persuasive." (Doc.

12-2, at 26). The ALJ noted that Dr. Arnold

> opined in June 2018 that the claimant could occasionally lift and carry up to 20 pounds and frequently up to 10 pounds, stand and/or, walk for 4 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, and perform occasional postural activity (except no climbing of ladders, ropes or scaffolds) (Exhibit 1A).

(Doc. 12-2, at 26; 12-3, at 14).

An ALJ is required to explain the supportability and consistency of a medical opinion in her decision. *See Densberger*, 2021 WL 1172982, at *8. The factor of supportability is considered through the lens that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The factor of consistency is determined through "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ explained that Dr. Arnold's opinion "is supported by the mild to moderate cardiac and musculoskeletal pathology via diagnostic studies and improvement in the claimant's symptoms with use of a brace and medication in suggesting that he would not be precluded from work activity from a physical standpoint." (Doc. 12-2, at 26; Doc. 12-3, at 10). The ALJ also considered Roush's "use of a cane, antalgic gait on examination and reports of increased knee pain with standing, walking and physical activity" when assessing Dr. Arnold's opinion and found "that sedentary exertional activity is more appropriate." (Doc. 12-2, at 26). Thus, the ALJ explained the supportability and consistency of Dr. Arnold's opinion basing her reasoning in

substantial evidence. (Doc. 12-2, at 26).

As such, this case shall not be remanded on the ground that the ALJ's consideration of Dr. Henning's opinion or Dr. Arnold's opinion was not supported by substantial evidence.

### V.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Commissioner's decision to deny Roush's application for benefits be **AFFIRMED**, final judgment be issued in favor of the Commissioner, and the Clerk of Court close this case.

An appropriate Order follows.

**Dated: January 18, 2022**                    *s/ Karoline Mehalchick*
                                                                **KAROLINE MEHALCHICK**
                                                                **Chief United States Magistrate Judge**